Fisher v. Patton.

FISHER, *Appellant*, v. PATTON *et al.*

In Banc, March 31, 1896.

1. **Building and Loan Association**: RIGHTS OF STOCKHOLDER: EQUITY. A stockholder in a building and loan association may maintain a suit in equity to restrain the directors of the association from closing out a series of its shares before their maturity, in violation of its by-laws, and from releasing securities of borrowing members, some of whom are insolvent, and to restrain them from discontinuing the collection of fines, penalties, etc., such action on the part of the directors having the effect of preventing plaintiff's shares from attaining their full value.

2. ———: ———: ———: STATUTE: VESTED RIGHTS. The act of the legislature of March 31, 1887 (Laws, p. 111; R. S. 1889, sec. 2817), providing that in paying out the shares of a building association "the free or unborrowed shares shall in no case receive more than the face value of the shares less the average premium paid by the borrowers of the association up to date" does not apply to an association in existence when it was enacted and organized under a prior law where its effect would be to violate the contract between such association and its stockholders.

3. **Practice**: INSTRUMENT SUED ON: STATUTE: STOCKHOLDER'S CERTIFICATE. A stockholder who files a petition against the directors of the corporation is not required to attach his certificate of stock or copy of it under Revised Statutes 1889, section 2088, providing that an instrument on which a pleading is founded, or a copy thereof, shall be filed with the latter.

4. **Injunction**: PETITION: VERIFICATION. A petition praying for an injunction as final relief, but not asking for a temporary injunction, need not be verified by affidavit.

5. **Corporation**: STOCKHOLDER: COLLATERAL SECURITY. The fact that a plaintiff's stock in a corporation is pledged as collateral security will not preclude him from maintaining an action to protect his rights as a stockholder.

*Appeal from Ray Circuit Court.*—HON. E. J. BROADDUS, Judge.

REVERSED AND REMANDED.

Fisher v. Patton.

*James L. Farris, Jr.*, for appellant.

(1) Stockholders may protect their individual rights in corporate property, and prevent by equitable action unauthorized acts of officers, the issuing of shares, misappropriation of funds—in fact any departure from the chartered purposes of the corporation. *R'y v. Collins*, 40 Ga. 582; *Kemp v. Mining Co.*, 78 N. Y. 159; *Chetlain v. Insurance Co.*, 86 Ill. 220; *Terwilliger v. Co.*, 59 Ill. 249. 10 Am. and Eng. Encyclopedia of Law, sec. 41, at page 953, and authorities cited in footnote "a." (2) A stockholder is entitled to restrain officers of bank from commission of acts contrary to law. *Manderson v. Bank*, 28 Pa. St. 376. (3) Injunction is the proper remedy. Directors and managing officers of a private corporation are clothed with a double character of agent and *quasi* trustee. Upon this trust relation depends the equitable remedies which may be invoked against them by the corporation, or the stockholders thereof. *Railroad v. McPherson*, 35 Mo. 13; Beach on Private Corporations, secs. 41 and 42. (4) The protection of rights of shareholders in incorporated companies against the improper or illegal actions of officers or other stockholders is the favorite branch of the jurisdiction of equity, and courts of equity will restrain the commission of rights which are contrary to law, as well as the improper management of the business of the company. 2 High on Injunction, secs. 1203 and 1225. And equity will also restrain officers from acting in excess of their corporate power. Same author, secs. 1226 and 1227. (5) Injunction was the proper remedy in this case. *Amer v. Building Loan Association*, 24 Atl. Rep. 552; *Fulton v. Building Loan Association*, 46 Minn. 190; *People v. Lowe*, 47 Hun, 577; *Barton v. Building & Loan Association*, 16 N. E. Rep. (Ind.),

486. (6) It was error to sustain the demurrer under the allegations in the petition. *Sullivan v. Building & Loan Association*, 12 So. Rep. 590. (7) Where a company is formed under the general act of incorporation the articles of association are as immutable as a charter granted by a special legislative act. Beach on Priv. Corp., sec. 44, page 83. (8) The laws subsisting at the time of making a contract enter into and form a part of it, as if they were expressly referred to or incorporated in its terms. *Holbrook v. Ives*, 7 West. Rep. (Ohio) 201. (9) A member of the corporation is bound by the laws, rules, and regulations, etc., and his duties, rights, and privileges are to be measured thereby. They embody the terms of a contract between the company and its members; the binding effect of the by-laws is derived from the assent of its members; such assent will be presumed from his act to become a member. 1 Beach on Private Corp., sec. 321. And neither the trustees nor members, against the wish of their number, can dissolve or terminate the business of an association, except pursuant to agreements and by-laws. *People v. Lowe*, 47 Hun, 577. High on Injunction, sec. 40, and footnotes "4 and 5." (10) Statutes are to be construed prospectively, unless a contrary intention appear. *State ex rel. v. Auditor*, 41 Mo. 35; *State ex rel. v. Hayes*, 52 Mo. 578; *State v. Grant*, 79 Mo. 113; *State ex rel. v. Walker*, 80 Mo. 633; *Leete v. Bank*, 115 Mo. 184; *In re Elliott's Estate*, 27 Mo. App. 229; Constitution, art. 3, sec. 15. (11) W. C. Patton, T. N. Lavelock, J. A. Anderson, and W. M. Allison, being borrowers of the association, in the same series attempted to be affected by the resolution aforesaid, were disqualified by the by-laws of said association, as well as from general laws of 1879, from taking any part in voting upon said proposition.

*Lavelock, Kirkpatrick & Divelbiss* for respondents.

(1)   A bill for injunction should be positive and specific in its averments, showing a clear, *prima facie* right to the relief demanded.   1 High on Injunctions [3 Ed.], sec. 34; 2 High on Injunctions [3 Ed.], sec. 1581; 2 Beach on Mod. Eq. Juris., secs. 641, 642, 643; 3 Pomeroy's Eq. Juris., sec. 1405; *McKinzie v. Matthews*, 59 Mo. 99; *Mastin v. Halley*, 61 Mo. 196; *Paris v. Haley*, 61 Mo. 453; *Strange v. Crowley*, 91 Mo. 287; *Veth v. Gierth*, 92 Mo. 97; *Taylor v. Von Schroeder*, 107 Mo. 206; *Pub. Co. v. Tel. Co.*, 83 Ala. 498; *Guadalupe Co. v. Johnston*, 20 S. W. Rep. (Tex.) 833. (2)   The instrument of writing, on which complainant's alleged right was founded, or a verified copy thereof, should have been filed with the bill.   R. S. 1889, sec. 2088; *Dyer v. Murdock*, 38 Mo. 224; *Burdsal v. Daviess*, 58 Mo. 138; *Railroad v. Knudson*, 62 Mo. 569.   (3) Equity will not enforce specific performance of a contract unless there be mutuality both as to the obligation and the remedy.   Pomeroy on Contract, sec. 162; Fry on Specific Performances, sec. 286; 22 Am. and Eng. Encyclopedia of Law, p. 1019; *Mastin v. Halley*, 61 Mo. 196; *Glass v. Rowe*, 103 Mo. 513; *Benedict v. Lynch*, 1 Johns. Ch. 370; 7 Am. Dec. 484.   (4) There is a fatal defect of parties defendant.   2 Beach on Private Corporations, secs. 607, 604, 599; 1 Morse on Banks and Banking [3 Ed.], sec. 128 b., pp. 262, 263; 1 Cook on Stock Companies, sec. 547; 2 High on Injunctions [3 Ed.], sec. 1217; 1 Morawetz on Private Corporations [2 Ed.], sec. 450.   (5)   The complainant is not the real party in interest, and can not maintain this action.   R. S. 1889, sec. 1990; Pomeroy's Code Remedies [3 Ed.], sec. 132; Bliss on Code Pleading [2 Ed.], sec. 45; Colebrooke on Coll. Security, sec. 280;

*Webb v. Morgan,* 14 Mo. 430; *Beattie v. Lett,* 28 Mo. 596; *Simmons v. Belt,* 35 Mo. 461; *Savings Ass'n v. Morrison,* 48 Mo. 273; *Cummings v. Kohn,* 12 Mo. App. 585; *Saulsbury v. Corwin,* 40 Mo. App. 373; *Thayer v. Campbell,* 9 Mo. 280; *Williams v. Smith,* 52 Mo. App. loc. cit. 134; *Spears v. Bond,* 79 Mo. 467. (6) The bill is not properly verified. 2 High on Injunctions [3 Ed.], secs. 1567, 1568, 1569; 1 Beach on Mod. Eq. Prac., secs. 85, 86, 598, 600; Maxwell on Code Pleading, pp. 195, 196; *Perkins v. Collins,* 3 N. J. Eq. 482; *Holdridge v. Gwinn,* 18 N. J. Eq. 26; *Youngblood v. Schamp,* 15 N. J. Eq. 42; *Gilroy's Appeal,* 100 Pa. St. 5; *Bullard v. Eckman,* 20 Fla. 661; *Landers v. Globe, etc., Co.,* 73 Ga. 176; *Baily v. Baily,* 16 S. E. Rep. (Ga.) 90; *Brooks v. O'Hara,* 8 Fed. Rep. 529. (7) The defendant association, being organized under a general incorporation act, is subject to subsequent legislation. Constitution, art. 2, sec. 15; 1 Beach on Private Corporations, sec. 37, p. 70; Endlich on Building Associations, sec. 272; Cooley on Const. Lim. [6 Ed.], p. 710; *Shrick v. House Building Ass'n,* 34 Mo. 423; *Allen v. Life Ass'n,* 8 Mo. App. 52. (8) The by-laws of a private corporation must be consistent with both existing and subsequent legislation. Endlich on Building Ass'n, sec. 272; 1 Beach on Private Corporations, sec. 312; *Building Ass'n v. Dorsey,* 15 S. C. 462; *Allen v. Life Ass'n,* 8 Mo. App. 52. (9) The act of the legislature of Missouri, approved March 31, 1887, repealed the former law in relation to building and loan associations. *Smith v. State,* 14 Mo. 152; *State v. Roller,* 77 Mo. 129; *State ex rel. v. McGrath,* 95 Mo. 193; *Berkshire v. Railroad,* 28 Mo. App. 225; *Young v. Railroad,* 33 Mo. App. 509; *Bartlet v. King,* 12 Mass. 536; *Rogers v. Watrous,* 8 Tex. 62; *Hogane v. Hogane,* 22 S. W. Rep. (Ark.) 167; *State v. Mines,* 38 W. Va. 125; *State v. Brookover,* 38 W. Va. 141. (10) The act of the legis-

lature, approved March 31, 1887, did not impair the obligation of any contract between complainant and defendant association. Sutherland on Stat. Const., sec. 471; Cooley on Const. Lim., p. 343; *Sherman v. Smith*, 1 Black. (U. S.) 587; *Curtis v. Whitney*, 13 Wall. 68; *Penn. Coll. Cas.*, 13 Wall. 190, *loc. cit.* 216; *Miller v. State*, 15 Wall. 478; *Edwards v. Kearzen*, 96 U. S. 595. (11) The act of 1887 did not disturb vested rights. Anderson's Law Dictionary, p. 907; Sutherland on Stat. Const., secs. 163, 164; Cooley on Const. Lim. [6 Ed.], pp. 343, 437 to 442; *Leete v. Bank*, 115 Mo. 184. (12) There can be no vested right in a general statute or the common law. Cooley on Const. Lim. [6 Ed.], pp. 345, 359, 437, 438, 439, 710; Myer on Vested Rights, pp. 27, 28, 30; *Covington L. & R. Co. v. Kenton Co. Ct.*, 12 B. Mon. 144; *Butler v. Palmer*, 1 Hill, 324.

### DIVISION ONE.

ROBINSON, J.—This is a proceeding in equity upon the following bill:

"Plaintiff, for his amended statement of cause of action, states: That the Richmond Building and Loan Association, one of the defendants herein, was incorporated under the laws of the state of Missouri, article 9, entitled 'Mutual Fund, Loan and Building Associations,' Revised Statutes, 1879, in the month of October, A. D. 1886, and has ever since its organization been transacting business in Ray county, Missouri; that W. C. Patton, Jas. A. Davis, William Bernard, Jas. E. Ball, John W. Shotwell, Jr., W. W. Brown, J. A. Anderson, T. N. Lavelock, W. M. Allison, and John T. Patton were the duly elected and legally constituted board of directors of said Richmond Building and Loan Association at the institution of this suit on August

21, 1894, and as such were intrusted by law with the management of the affairs of the association; and that said directors, since the filing of the original petition in this case, were reelected as directors of said Richmond Building and Loan Association, and as such are by law intrusted with the management of the affairs of the association; that W. C. Patton was the president thereof, and that Geo. W. Schweich is secretary of said Richmond Building and Loan Association.

"Plaintiff further states that at the date of its incorporation as aforesaid, the capital stock of said association, defendant, was one hundred thousand dollars, which said capital stock was divided into shares of the par value of two hundred dollars each, making five hundred shares in all; that prior to the incorporation of the defendant association as aforesaid, those wishing to take stock or shares, including the plaintiff, pursuant to the laws in such cases made and provided, filed articles of agreement and association of the Richmond Building and Loan Association with the recorder of deeds within and for the county of Ray, and state of Missouri; that by the terms of article three of said agreement, the capital stock and shares were fixed as follows, as will more fully appear by a recital thereof, which is as follows: 'Article III. The capital stock of this corporation shall be one hundred thousand dollars, divided into five hundred shares of the par value of two hundred dollars each, of which number three hundred shares have been subscribed and the entrance fees thereon have been paid in;' that by the terms of article seven, the object and purpose of the corporation was expressed to be as follows: 'Article VII. The object and purpose of this corporation shall be the accumulation of a fund to be loaned to its stockholders or others, with which to purchase, or improve real estate, or for other purposes, the loans to be secured by real estate;'

that said association, by virtue of the authority given by law, before the issuance of any certificates or shares of stock adopted certain by-laws for its government, and for the proper and just protection of the property rights of others connected with said association as shareholders; that the funds for said Richmond Building and Loan Association, under the laws of its creation, as well as under section seven of the by-laws aforesaid, was to be formed by 'payments of entrance fees, monthly dues, premiums on loans, interest on loans, fines, and from other sources;' that by section 46 of the by-laws aforesaid, under the title of dissolution, provided among other things that when the assets of the association, exclusive of unmatured monthly dues, shall be sufficient to make each and every share of stock worth in cash the sum of two hundred dollars, etc., the directors shall then proceed to pay, satisfy, and discharge first the debts and liabilities of the association, and then to pay over to the owner of each share not having obtained a loan the sum of two hundred dollars for each and every share of stock held by him or her; all of which will more fully appear from a recital of said section 46, which is as follows, to wit:

" 'DISSOLUTION.

" 'Section 46.   When the assets of the association, exclusive of unmatured monthly dues, shall be sufficient to make each and every share of stock worth in cash the sum of two hundred dollars, and there shall be funds enough in the treasurer's hands, with loans and with advances made to shareholders, to pay that amount to the shareholders after paying all debts of the association, the directors shall then proceed to pay, satisfy, and discharge, first the debts and liabilities of the association, and then they shall pay over to the owner of

each share not having obtained a loan from the association for the purpose hereinbefore specified, the sum of two hundred dollars for each and every share of stock held by him or her upon which no loan has been made by the association; and thereafter no further monthly dues or interest shall be payable by the stockholders, except that all arrears shall be fully paid up, and the association shall deliver to each shareholder, mortgagor, who has in other respects fully complied with the conditions of his mortgage or deed of trust, a discharge thereof, and any balance remaining in the treasury shall be distributed to the shareholders of this corporation, in proportion to the number of shares held by each. After the performance of the foregoing duties, this association shall cease to exist, and it shall not sooner be dissolved.'

"Plaintiff further states that the amount of entrance fee was fixed by the by-laws at fifty cents on each share, and that the monthly dues aforesaid required to be paid into the association by each shareholder upon every share of stock held by him was by the by-laws aforesaid fixed at one dollar, as will fully appear from section five of said by-laws, which is in words and figures as follows, to wit:

#### "'MONTHLY DUES.

"'Section V. Each and every stockholder, for each and every share of stock that he or she holds in the association, shall pay the sum of one dollar on the second Tuesday in October, 1886, and on the second Tuesday in every month thereafter to the secretary of the association.

"Plaintiff further states that he was a subscriber to said articles of agreement, and became the purchaser of fifteen shares of said capital stock issued soon after

the incorporation of defendant association, and now designated and known as series A, and that said association caused to be delivered to plaintiff herein, pursuant to the articles of agreement and incorporation aforesaid, and pursuant to the by-laws of said association, three certificates, representing in all fifteen shares, as aforesaid, of the par value of $200 each, and duly signed by its president and secretary. Said certificates, omitting numbers, name, date, and signature, were in the following form to wit:

" 'No. ———. Richmond Bulding and Loan Association. Shares ———

" 'Capital stock, $100,000. Richmond, Mo. Shares each $200.

" 'This certifies that ——— is the owner of ——— shares of capital stock of the Richmond Building and Loan Association, organized under, and according to, the laws of Missouri, and is entitled to all the privileges and subject to all obligations set forth in the constitution and by-laws of said Association.

" 'Transferable only on the books of the association in the presence of the secretary, either in person or by attorney duly authorized according to the by-laws.

" 'Richmond, Mo., ———, 18——.

" ' ———, President.'

" ' ———, Secretary.

"Which said certificates were duly filled out and delivered to plaintiff as aforesaid, and are not filed as an exhibit herein, because they are temporarily hypothecated as collateral security with other persons; that plaintiff has kept the dues paid thereon, as by the terms of the by-laws of said association he was required to do, from and after the second Tuesday in October, A. D. 1886, up to the time when the directors aforesaid refused to permit any further payments on said shares of stock, as will hereafter appear, and has, since the date of such

action complained of, promptly tendered to the secretary of said association all dues accruing to said association up to the present time, and is still willing and anxious to continue the payments thereon, until the assets of the association, exclusive of unmatured monthly dues, shall be sufficient to make each and every share of said capital stock worth in cash the sum of two hundred dollars, and until there shall be funds enough in the treasurer's hands, with loans and with advances made to shareholders, to pay that amount to the shareholders after paying all debts of the association.

"Plaintiff further complains and states that the directors aforesaid have the management and control of the business of said association defendant as aforesaid, have illegally and wrongfully directed that no further interest and dues be collected on stock of shareholders in said series 'A,' and unlawfully refused to collect from such holders any sum or sums whatever upon any such shares, as by law they are required to do; that the said shares are not now worth the par value, as declared by the by-laws of said association they should be before dissolution of said corporation or first series of shares; that although the said association has not cash on hands sufficient to pay off and discharge the debts of said association, and to pay the holders of free and unborrowed shares the par value of said stock, the said directors have unlawfully and illegally directed that all mortgages and deeds of trust given by the borrowers in said series 'A' to the Richmond Building and Loan Association be duly satisfied of record; that said officers as aforesaid are about to unlawfully and illegally cancel, satisfy, and release said mortgages and deeds of trust and other obligations and evidence of indebtedness due said association on the part of the shareholders thereof, when the same has not been paid, satisfied, or in any manner liquidated; that said board

of directors aforesaid, defendants herein, undertook by improper and unlawful action, on or about the tenth day of August, A. D. 1894, to declare that the assets, funds, and property belonging to series 'A,' as then denominated, and intended to refer to the shares issued to plaintiff upon the organization of said association in the first instance, was sufficient to pay the face value of the free shares, or shares on which no loans had been made by the association, by a method repugnant to the laws governing said association at the date of the organization of said association defendant, and not provided for in the articles of agreement, and in violation . of the provisions of section 46, aforesaid, of the by-laws and constitution of said association, as aforesaid, to wit: by charging the holder of each free share in the series aforesaid denominated 'series A' with the sum of forty-two dollars on each share of the association defendant's stock, and by promising to give the holder thereof, including plaintiff, only one hundred and fifty-eight dollars when the money may be collected on other shares belonging to other and different series of the defendant's creation—all of which wrongful and illegal threatened acts will more fully appear from the order or resolution passed by the board of directors aforesaid, at the date aforesaid, as follows, to wit:

" 'WHEREAS, it appears from the July statement of the secretary of this association that the value of the shares of stock of series "A" then was $158.01 per share, and that the average premium paid by borrowers of this association up to date of statement was $42 per share; and,

" 'WHEREAS, it appears to the satisfaction of the board of directors of said association that the assets, funds, and property belonging to series "A" of said association are sufficient after payment of debts, to pay the face value of the free shares in said series, less the

average premium paid by borrowers of the association; therefore be it

" 'Resolved, that we declare the stock in series "A" has reached the maturity value thereof as provided by section 2617, Revised Statutes of Missouri (1889), and that the deeds of trust of borrowers upon which all interest, dues, and fines are paid be released at cost of borrower, upon surrender of certificates of stock, and that free shares be settled according to the provisions of the act of the legislature of Missouri, approved March 31, 1893, relating to the payment of free or unpledged shares of stock in such association.'

"Plaintiff further states that the directors aforesaid are still threatening to carry said order as aforesaid into execution, and to release all mortgages due the association aforesaid whereon all dues and fines have been paid up to the date of the passage of said resolution, and to deprive the plaintiff of his just rights under the articles of agreement as aforesaid and the by-laws governing said association, .fixing the rights, duties, and obligations of both defendant association and plaintiff, and to deprive plaintiff of the benefits of his full contract rights.

"Plaintiff further states that he, as the owner of the shares aforesaid, is entitled to the sum of two hundred dollars in cash upon each share so held by him in said series before dissolution of said association, or of said series now denominated as series 'A', as aforesaid, and before the deeds of trust taken by the association to secure the loans made to shareholders can or ought to be released under the laws authorizing its issue and under the corporate by-laws aforesaid in relation to dissolution, etc.; that such threatened acts on the part of the directors are illegal, and that the resolution passed as aforesaid was without warrant or authority in law, as he believes; that many of the borrowers in

series 'A', as aforesaid, are wholly insolvent, and should such wrongful and illegal action be taken by the board of directors as aforesaid, great and irreparable loss would be sustained by plaintiff as shareholder.

"Plaintiff further states that, if the directors as aforesaid are permitted to carry out such threatened acts, they would violate the contract between plaintiff and defendant association, and put plaintiff's right in great jeopardy, and that such unlawful action would affect the value of plaintiff's shares to a very great extent—so much so that accurate computation can not be made, and at least to the extent of about forty-two dollars on each share of the fifteeen so held by plaintiff as aforesaid—the difference between the face value of said shares and the alleged value thereof at the time of passing said resolution or order.

"Plaintiff further states that many of the shares in series 'A' were borrowed on at a bonus of ten dollars by some of the members of the board of directors, while the said board of directors wrongfully, unjustly, and inequitably are threatening and are about to unlawfully charge the plaintiff up with the sum of forty-two dollars, on the theory of average bonus; that if the threatened acts of said board of directors are to be consummated, such persons who borrowed on shares in series 'A' would thereby obtain an advantage of this plaintiff to the extent of thirty-two dollars on each share; that at the time said loans were made, the association paid them the sum of one hundred and ninety dollars in cash on their said shares, giving to them an excess from the corporate funds over that of the non-borrower or holder of free shares of thirty-two dollars as aforesaid.

"Plaintiff further states that said order or resolution, passed or attempted to be passed as aforesaid, was the result of the illegal participation in the vote on

said proposition by W. C. Patton, T. N. Lavelock, J. A. Anderson, and W. M. Allison, who were borrowers in series 'A' aforesaid, and owners of shares in said series, on account of which they were precluded by the by-laws of the association, as well as the general laws of the state of Missouri, and particularly section 968, Revised Statutes, 1879, from taking part in the vote, which said by-law is as follows:

" 'Sec. 15.   No member who has borrowed money from the association shall be allowed to vote on any question affecting the claim of the association against himself.'

"Plaintiff further states that Jas. E. Ball and Jno. W. Shotwell, Jr., defendants herein, voted against said proposition aforesaid, and the proposition was not legally carried by said vote, but the chairman declared the resolution carried, and pursuant thereto the board of directors are threatening and are about to carry out and intend to execute the said illegal order or resolution so voted and adopted as aforesaid, by releasing the deeds of trust, and by ceasing to collect any further dues, fines, forfeitures, and interest from the holder or holders of shares or certificates of stock in said association in said series 'A' aforesaid; that although plaintiff has tendered his dues on shares held by him as aforesaid to the secretary of said association, the legally constituted and properly appointed person to collect and receive the same, yet such secretary, acting under the illegal order or resolution as aforesaid, refused and still refuses to receive the same thereon as aforesaid.

"Wherefore, inasmuch as plaintiff has no adequate remedy at law, he prays for an order of injunction to issue out of this court, directed to said defendants, enjoining and restraining them, and each of them, their agents, servants, and officers from releasing the

deeds of trust so executed by borrowers on shares in said series 'A' or other securities by said association, and especially enjoining and restraining said directors, as well as the defendant's other officers, from releasing the deeds of trust executed by W. M. Allison, J. A. Anderson, W. C. Patton, and Thomas N. Lavelock, and sufficient others to preserve and protect the rights of plaintiff, and also enjoining said defendants, and each of them, from taking any illegal action as threatened by them, or discontinuing the collection of fines, penalties, dues, and interest, until the funds be sufficient to pay plaintiff's shares according to the face value, as expressed in the certificates issued and given to plaintiff, and as required by the by-laws of said association aforesaid; and that said defendants, directors, and association be required to accept all dues, fines, and penalties to accrue on said shares, until the assets of the association, exclusive of unmatured monthly dues, shall be sufficient to make each and every share of stock worth in cash the sum of two hundred dollars, as by the laws governing said association, and as by the contract of plaintiff as shareholder with said association, the plaintiff is legally entitled to receive; and for such other and further orders, judgments and decrees, and for such other and further relief, as the court shall deem meet and just in the premises.

"W. D. FISHER.

"Subscribed and sworn to before me, this thirteenth day of October, A. D. 1894.

"Witness my hand as clerk, and the seal of the supreme court. Done at office in the city of Jefferson, the day and year aforesaid.

[SEAL]                         "JOHN R. GREEN,

"Clerk Supreme Court."

By the bill preceding this opinion, plaintiff as a stockholder seeks by injunction to prevent defendants,

as directors of a building and loan association, from releasing certain deeds of trust given by stockholders in series "A" of its stock, and from releasing other securities held by the association, and to prevent the defendants from discontinuing the collection of fines, penalties, stock dues and interest due from plaintiff as a stockholder until they have accumulated funds to pay off plaintiff's shares; in short, till the assets of the association exclusive of unmatured monthly dues are sufficient to enable each share of stock, including plaintiff's, to be worth in cash $200, its value at maturity.

The association is a party defendant. Its capital stock is $100,000, divided into five hundred shares of $200 each. A portion of the stock is known as series "A" of which plaintiff owns fifteen shares, on which he has made all the required payments from time to time.

By section 46 of the by-laws of the association it is provided that when the assets of the association, exclusive of monthly dues, are sufficient to make each and every share worth in cash the sum of $200, and there shall be funds in the treasurer's hands, with loans and advances made to shareholders, to pay that amount to the shareholders after paying all debts of the association, the directors shall then pay over to the owner of each share not having obtained a loan from the association the sum of $200 each on every share of stock by him or her upon which no loan has been made by the association, and shall deliver to each shareholder mortgagor who has complied with all the conditions of his mortgage or deed of trust a discharge thereof, and any balance then remaining in the treasury of the association shall be distributed to the shareholders in proportion to the number of shares held by each. And that after the performance of the foregoing duties, the asso-

ciation shall cease to exist, and it shall not sooner be dissolved. The entrance fee, monthly dues, interest and fines as a penalty for not paying same promptly, were fixed by another law.

The directors have directed that no further interest, fines and dues be received on stock known as series "A" and refuse to collect the same and refuse to receive the same when tendered by plaintiff, although such shares are not now worth the par value thereof and there are not sufficient funds in the treasury to comply with by-law 46 as aforesaid. And the directors have given orders that all mortgages and deeds of trust made by borrowers owning stock in series "A" be satisfied of record and are about to cancel the same. The directors claim to be acting under authority of section 2817 of our Revised Statutes, which is an act of 1887.

It is further alleged that the directors resolved to pursue this course at a meeting when four directors were present who had borrowed money from the association, and voted for the same, and two other directors present voted against it. This meeting of the directors was held August 1, 1894.

The resolution adopted sets out the fact that the July, 1894, statement, furnished by the secretary, shows that the value of the shares of stock series "A" was then $158.01 per share, and that the average premium paid by borrower of the association up to the date of the statement was $42 per share. The resolution then declares that the assets, funds, and property belonging to series "A" are sufficient after the payments of debts, to pay the face value of the free shares in said series less the average premium paid by borrowers, and the directors then declare that said series "A" has reached the maturity value thereof as provided by section 2817 of the Revised Statutes of 1889;

that deeds of trust upon which all interest, etc., have been paid, be released, and that the free shares thereof be settled according to the provisions of an act of the legislature approved March 31, 1893, relating to the payment of free or unpledged shares of building associations.

It further appears that the resolution, if carried out, will deprive plaintiff of about the sum of $42 on each share of stock held by him in series "A," the difference between the actual value thereof, and the alleged value fixed in the resolution, which result is reached by crediting each share with $42, the average rate of premium. Plaintiff is not a borrower.

The meat of the whole matter is, that after the payment of the debts of the association there will not be sufficient money on hand to pay the unpledged shares in full, and that a number of shareholders have paid a bonus of $10 per share and borrowed $190 thereon. Further, that this bonus is included in the calculation to obtain the average premium which the directors fix at $42, and thus the owners of pledged shares obtain an advantage of $32 per share over the owner of unpledged shares.

A demurrer was filed by all of the defendants, which was sustained on the fifth, sixth, and seventh grounds, which are, in brief, that the bill does not state facts sufficient to constitute a cause of action, or entitle plaintiff to the relief demanded, or in fact to any relief.

The association was incorporated under section 958 of the Revised Statutes of 1879, and the directors here are proceeding under section 2817 of the Revised Statutes of 1889, which is the act approved March 31, 1887 (Laws of 1887, p. 114).

It is clear that if the defendants proceed as they intend, plaintiff will receive in cash but $158 each for his shares, when under the Revised Statutes of 1879

and by-law 46 of the association he is entitled to $200 in cash before dissolution, in addition, at dissolution, to his pro rata share of the moneys remaining.

It is admitted that there is not sufficient money to pay the debts of the association, and pay $200 in cash on each share of stock, and that only by crediting each share with the sum of $42 not in the treasury (*the average rate of premium*) as provided by the act of 1887, can there be any pretense of paying $200 in cash on each unpledged share of stock. It is also admitted that the directors are about to release the mortgages and deeds of trust given by various borrowing stockholders to the association, and that many of these are insolvent. There can be no pretense of justification for such a course of conduct except on the theory that the act of 1887 applied to the contract between plaintiff and this association made in 1886, under the Revised Statutes of 1879.

I. The office of a demurrer interposed to a bill in equity is to reach a determination whether its allegations show a proper case for equitable interference.

The plaintiff is a stockholder in the association, and has the right to protect his interests as such when they are about to be sacrificed. This right is one peculiar to each stockholder. The plaintiff is not attempting to enforce some right possessed by the association. He desires protection for his own interests as a stockholder. Even if the rights threatened were corporate rights, those which ordinarily the corporation could enforce, still the bill is sufficient, for it shows that a majority of the directors would pay no attention to his demands for relief; in fact they refused to accept money tendered by him, complying with his contract, and are threatening to release mortgages and deeds of trust which furnish the only means, together with the continuance of the association as a going

concern, to even pay plaintiff the amount in cash due him on each share of his stock before or at dissolution.

Equity is the only forum where plaintiff can be protected. These directors are trustees and are refusing plaintiff rights which their trust, if properly administered, would yield to him. Further, it is alleged that many of the persons who have executed mortgages and deeds of trust to the association are insolvent, and if same are satisfied of record as threatened by the officers, the association will be deprived of all hope of ever collecting the several amounts to it properly belonging. More than this, if a dissolution now occurs, the shares of plaintiff will never be worth in cash the sum of $200.

We therefore conclude that the bill is sufficient. It may well be sustained on the theory that the acts threatened would be a fraud upon plaintiff's rights as a stockholder. It may be observed, also, that plaintiff's bill does not ask for a money judgment, but simply equitable relief to prevent the carrying out of the resolution of the board of directors aforesaid, which would result in canceling various mortgages and deeds of trust which can only be prevented by a court of equity.

II. Can the act of 1887 (Laws of 1887, p. 114) be held to apply to contracts between this association and plaintiff made under the provisions of the Revised Statutes of 1879, under which it was incorporated, and by-law 46 of the association which it adopted, and which is by the demurrer admitted to have been valid? Is there any doubt but what as between the association and plaintiff there was a contract?

We think not. We have no doubt about the power of the legislature to amend prior laws providing for the incorporation of such association, and the conditions thereof; nor of the power to repeal

by-laws adopted in pursuance of prior laws, or in the absence of any prior law authorizing them, where no law forbids.   But conceding the power of repeal in both cases, we do not concede that such power of repeal can affect contracts existing at the time the amending act is passed.   The amendatory act can not affect vested rights, and plaintiff's rights are vested. This association, so far as any stockholder not consenting to the amendatory act is concerned, must be held to the agreement and contract made, which guaranteed to each stockholder, the owner of shares not pledged, $200 in cash on each share of stock owned by him, before or at dissolution.

The action of defendants in an attempt to show a value of $200 in cash on the books of the association for each share by a fictitious credit of $42 thereon, which is assumed to be present because the average of premiums amount to that sum, can not be upheld as against plaintiff.   The statement of July, 1894, shows that the shares were worth $158 in cash and only by this fictitious credit could the amount of $200 be reached.   Such a calculation deprives plaintiff of a substantial right.   It deprives him of his property and impairs the obligation of his contract.   We hold, therefore, that the act of 1887 does not apply to this association, in so far as to authorize its board of directors to proceed in the manner complained of by plaintiff.

III.   Contention is made that plaintiff's case must fall because he does not attach to his bills as an exhibit the certificate of stock issued to him by the association, but accounted for its absence by the statement that it was pledged as collateral.

There is no force in this contention.  The certificate of stock is not the foundation of this action, and section 2088 of our code does not apply.   The plaintiff is here

suing to prevent the defendants from doing certain acts which would be prejudicial to his rights as a stockholder. The certificate is simply an evidence of his stockholding position. His rights are founded in the law.

IV. Respondent further contended that the bill was not properly verified. Where, as in this case, no temporary injunction is sought, but the petition asks an injunction as the final relief desired, and as same was to be heard by the court before an order would be made, we see no necessary occasion for verifying the petition.

If no order is to be made, or judgment decree entered, until the allegations of the petition are established by proof before the court, or admission by way of pleading, there is no virtue in a verified petition over one not verified. The verification furnishes no aid to the court in the ascertainment of the facts, nor renders more conclusive the admission by way of pleading. Our statute does not require a verified petition, and High, in his work on Injunctions, lays down the rule, that, "a bill asking a final judgment, where no temporary injunction is sought, need not be under oath."

V. It is also claimed by respondent that plaintiff is not the real party in interest, in that, as disclosed by the petition, his stock in the association was pledged as collateral for a loan. We do not see the force of this objection. Plaintiff has still such rights as owner of the equity of redemption in the stock as will authorize in equity his interposition to prevent its destruction or impairment by the wrongful acts of the company's board of directors.

From all of which, we hold that the demurrer should have been overruled and the petition heard, and the cause is reversed and remanded for that purpose. All concur.

PER CURIAM.—The foregoing opinion of ROBINSON, J., handed down in division number one, *modified*, is adopted as the opinion of the court *in banc*, and the judgment of the circuit court is reversed and the cause remanded to be proceeded with as therein directed. All the judges concurring.