Burgess, J.
On the twenty-seventh day of September, 1867, Caroline Clark obtained from the New York Life Insurance Company a policy of insurance on the life of her then husband, John H. Clark, for the sum of $5,000 to- be paid to her or her legal representatives in case of his death. The policy contained the following provisions: “And the said company do hereby promise and agree to and with the said assured, his executors, administrators and assigns, well and truiy to pay, or cause to be paid, the said sum assured, to the said C. Clark or her legal representatives, within sixty days after due notice and proof of interest (if assigned or held as security), and the death of said assured.” John H. Clark died April 4, 1869, leaving his widow, and the following named children, born of his marriage with said Caroline, viz.: Amelia T., then the wife of Carey R.- Reed, Martha, Henry and Thomas Clark. On the sixth day of July, 1869, the widow received on said policy the sum of $4,884.97.
In July, 1869, Mrs. Clark purchased with a part of the proceeds received from said policy of insurance a farm for which she paid $3,600. She and three of her children lived on the farm until 1870, when she sold it to one Jesse Fore for the sum of $3,670, taking his *680 notes for the purchase money secured by a. deed of trust on the farm. She then returned to the city of Cape Girardeau, where she had formerly lived, and on the sixteenth day of September, 1881, intermarried with said John Painter. She died April 2, 1884, and on the twelfth day of April, 1890, this suit was brought by her heirs to recover from Painter four fifths of the insurance which they claim belonged to them, and which had been fraudulently converted by said Painter. Defendant died after the suit was begun and it was revived against his administratrix.
There was evidence tending to show that after his marriage with Mrs. Clark, Painter took possession of the Fore notes given for the purchase money for the farm, and that he subsequently collected them.
The court below held that all of the plaintiffs except Amelia T. Reed, who'was under coverture at the time her right of action accrued, were barred by the statute of limitations; dismissed the suit as to them, and rendered final judgment against them for costs, and rendered judgment in favor of Amelia T. and Cary R. Reed for $1,659.15. The parties against whom judgment was rendered filed their motions for new trial which were overruled. Defendant then sued out a writ of error from this court as to the judgment against her in favor of Amelia T. and Cary R. Reed and the other plaintiffs sued out a writ of error from this court as to the judgment dismissing their petition, and for costs.
The contention of the administratrix is that by the terms of the policy as well as under the provisions of section 15 of chapter 115, General Statutes, 1865, the death loss was payable to Mrs. Clark on the death of her husband, and that the heirs of her husband had no interest in the fund. Said section 15 reads as follows:
“It shall be lawful for any married woman, by herself, and in her name, or in the name of any third *681 person, with his assent as her trustee, to cause to he insured, for her sole use, the life of her husband, for any definite period, or for the term of his natural life; and in case of her surviving her husband, the sum or net amount of the insurance becoming due and payable by the terms of the insurance, shall be payable to her, and for her own use, free from the claims of the representatives of her husband, or any of his creditors; but such exemptions shall not apply when the amount of premium annually paid shall exceed $300.”
Section 18, chapter 115, General Statutes, 1865, is as follows:
“Any policy of insurance heretofore or hereafter made by any insurance company on the life of any person, expressed to be for the benefit of any married woman, whether the same be effected by herself or by her husband, or by any third person in her behalf, shall inure to her separate use and benefit, and that of her children, if any, independently of her husband and of his creditors and representatives, and also independently of such third person effecting the same in her behalf, his creditors and representatives; and a trustee may be appointed by the circuit court for the county in which such married woman resides, to hold and manage the interest of any married woman in any such policy, or the proceeds thereof.”
It will be observed that section 15, supra, has application alone in case the policy is taken out for the sole use of the wife, and not where it is taken out simply for her benefit. The policy under consideration was not for the sole use of Mrs. Clark, but did provide that in case of the death of her husband the amount of the policy should be paid to her within sixty days after due notice of the death of the assured. The purpose of section 15 was to make the amount received on such a policy the separate property of the wife, and as pro *682 vided by its express terms “for her own use, free from the claims of the representatives of her husband or of any of his creditors.” As the policy in this case did not provide that it was for the sole use of Mrs. Clark, it comes within the provisions of section 18, and must be held to have inured, as provided by the last named section, to the separate use and benefit of Mrs. Clark and her children, jointly.
As was said by Sherwood, C. J., in State to the use of Wolf v. Berning, 74 Mo. 87: “For whatsoever the law annexes as the incident of a contract, whether granting a privilege or announcing a prohibition, is as much part and parcel thereof as though written therein or indorsed thereon.” See, also, Wanschaff v. Benefit Soc., 41 Mo. App. 206. Governed by the law as thus announced, section 18 entered into and became a part of the contract of insurance as much so as if it had been incorporated in the policy, and must be so construed. When this is done, was Mrs. Painter the sole and only beneficiary in the policy?
In Felix v. A. O. U. W., 31 Kan. 81, a life insurance policy provided that the benefit at the death of the assured should be paid to his wife and children, and it was said “which, according to all well settled rules of construction, means the wife and children equally.” See, also, Hamilton v. Pitcher, 53 Mo. 334. A similar rule was announced in Ins. Co. v. Baldwin, 15 R. I. 106, where a policy of life insurance was made payable to M. and the children of F.
So in Jackman v. Nelson, 147 Mass. 300, a certificate of membership in a beneficiary association provided for the payment of a certain sum to the wife of a member of the association, at his death, “for the benefit of herself and the children of such member.” And it was held that the widow and such children were entitled- to share equally in such sum; that she was not entitled *683 to hold the money absolutely, and that “even under similar language in a will the children would have a right which they could enforce in a court of equity.”
■ It, therefore, seems that there is no escape from the conclusion that the policy was for the benefit of Mrs. Clark and her children; and that the money received by her on the policy was not her separate property with respect to her children, but belonged to her and them jointly, share and share- alike, independently of the creditors and representatives of the husband. When Mrs. Clark received the money, that portion of it which belonged to her children she received as their trustee. Wanschaff v. the Masonic Mutual Benefit Soc., supra. Baker v. Young, 47 Mo. 453, in so far as it is in conflict with the views herein expressed, is disapproved.
With respect to the appropriation of the money received by the mother of plaintiffs on the policy of insurance by Painter, defendant’s intestate, the court found that Mrs. Clark, in order “that she might better save and take care of said money and secure a home for herself and children, invested said money in purchasing a farm in the northern part of Cape Girardeau county, known as the McNeely farm. That she and her family moved upon said farm, and continued to run the same, in partnership with one Jesse Pore, until 1870, when she sold said farm to said Jesse Pore for the sum of $3,670. That Jesse Pore executed to said widow, in her own name, notes for the purchase money of said farm, and, to better secure said notes, executed a mortgage or deed of trust on said land. That afterward, in the year 1874, the said Caroline Clark, widow as aforesaid, intermarried with John Painter and remained his wife up to the time of her death. That afterward the said John Painter, fraudulently intending to cheat and defraud these plaintiffs of their inheritance, got pos *684 session of said notes and collected and appropriated the same in his own name and use, and has ever since, with the interest due thereon, claimed the title and ownership of said insurance money.”
Defendant insists that there was no evidence upon which to predicate the finding and judgment of the court as-to plaintiffs Reed and wife. Such finding and judgment can not be justified'on mere suspicion, however strong, but in order to be upheld must be sustained by evidence clear and convincing. In Burdett v. May, 100 Mo. 13, it was said: “The rule which prevails in this state, and the general rule elsewhere, upon the subject of resulting trusts, requires that in order to prove such a trust it must be established by testimony so clear, strong and unequivocal as to banish every reasonable doubt from the mind of the chancellor respecting the existence of such trust. This is the substance and effect of the language employed by the authorities and by this court in numerous eases.” See Johnson v. Quarles, 46 Mo. 423; Forrester v. Scoville, 51 Mo. 268; Ringo v. Richardson, 53 Mo. 385; Kennedy v. Kennedy, 57 Mo. 73; Gillespie v. Stone, 70 Mo. 505; Philpot v. Penn, 91 Mo. 38; Berry v. Hartzell, 91 Mo. 132; Darling v. Potts, 118 Mo. 506; Bradley v. Bradley, 119 Mo. 58.
The only evidence tending to show that John Painter received any part of the money collected by his wife on the policy of insurance was, that on the twelfth day of May, 1878, he acknowledged satisfaction in his own name of the deed of trust given by Eore to her to secure the payment of the purchase money for the farm which she had previously sold to him, and which she had purchased with a part of the insurance money; and the further fact, if it be evidence at all, that he, Painter, gave Mrs. Eore, at the request of James Young, the amount remaining due-on the Eore notes, after the
*685 death of her husband; all of which was not inconsistent with the theory that in so doing he was acting as the agent of, or simply doing an act of courtesy for, his wife. It was not shown whether or not Mrs. Painter had any money or property at the time of her decease, and clearly nothing more than inferentially, if even that, that he received or appropriated to his own use any part of the money received by her on the policy, directly or indirectly. The presumption is rather that whatever of money or property of hers came into his possession, during their married life, was turned over to her by him; that is, that he acted honestly and in good faith toward her and her children, and not dishonestly. Painter is now dead, and to say nothing of the laches of plaintiffs in instituting this suit, there was no evidence to justify the finding and judgment of the court. The judgment as to Mrs. Reed and husband is reversed, and as to all other plaintiffs it is affirmed.
Sherwood, J., and Gantt, P. J., concur in reversing, specially in a separate opinion.