ANCHOR SERUM COMPANY v. CHARLES L. REA and FIDELITY & DEPOSIT COMPANY OF MARYLAND, Appellants.

ANCHOR SERUM COMPANY, Appellant, v. CHARLES L. REA, and FIDELITY & DEPOSIT COMPANY OF MARYLAND.—32 S. W. (2d) 587.

Division One, November 24, 1930.

*O. E. Shultz* and *Culver, Phillip & Voorhees* for plaintiff.

*John I. Williamson* and *Brown, Douglas & Brown* for defendants.

GANTT, P. J.—Plaintiff fairly states the case as follows:

"The plaintiff and defendants are here on cross-appeals from a judgment rendered in two cases which were consolidated and tried without a jury.

"Both cases are actions at law to recover damages for the breach of three written contracts, one dated September 22, 1926, one dated October 8, 1926, and one dated October 13, 1926, in each of which plaintiff agreed to sell and defendant Rea agreed to buy specified quantities of anti-hog cholera serum at certain specified prices, the deliveries to be made as therein stipulated. The defendant Fidelity & Deposit Company of Maryland was the surety on Rea's bond for the performance of his agreements. The trial court awarded the plaintiff $29,950 damages on the contract dated October 13, and found in favor of the defendants on the other two contracts.

"There was no dispute whatever as to the facts relating to the contracts of September 22 and October 8. The execution of both contracts was admitted. By the contract of September 22, defendant Rea agreed to purchase 3,400,000 cubic centimeters of serum. He took and paid for 2,900,000 and refused to take the remaining 500,000. It was admitted that, if Rea breached that contract plaintiff is entitled to recover $1,750. By the contract of October 8, defendant Rea agreed to purchase 2,000,000 c. c. s. of serum. He took and paid for 800,000 c. c. s. and refused to take the remaining 1,200,000. It is admitted that, if Rea breached that contract plaintiff is entitled to recover $7,500. By the contract dated October 13, defendant Rea agreed to purchase 4,000,000 c. c. s. of serum. He refused to take any. It is admitted that if Rea breached that contract plaintiff is entitled to recover $30,000 less $50 paid by the defendant Rea, which was the amount awarded by the court.

"At the time each of the contracts was made, anti-hog cholera serum was manufactured and released in accordance with regulations prescribed by the U. S. Bureau of Animal Industries promulgated under authority of an act of Congress. The regulations required that the serum be made in a certain way under the supervision of Government inspectors in a plant to which the inspectors alone held the keys, and that, after the serum was manufactured, it be subjected to a test for potency which extended over a specified period of days. This test was also made under the supervision

of Government inspectors. If the serum failed to meet the potency test, it could not be removed from the plant, but, if it did, the inspectors released it, giving a certificate with each batch showing that it had been released and the date and quantity. The Government regulations began in 1913 and were changed from time to time. However, for eight or ten years prior to September 22, 1926, and on that date, when the first contract was made, the regulations required a potency test of twenty-one days. On September 26, it was reduced to fifteen days. On October 8, the date of the second contract, it was reduced to eleven days, and on October 18 it was entirely eliminated. Briefly stated, the method of making the potency test, at the dates of the contracts, was this: Cholera virus was injected into eight pigs, five of the eight pigs were, at the same time, also inoculated with the anti-cholera serum. If the three pigs that were not inoculated with anti-cholera serum became sick within the specified time (twenty-one days if the regulations required twenty-one days) and the five pigs that were inoculated with the anti-cholera serum were not sick in the specified time, the serum met the requirements of the Government.

"At the time specified in each of the contracts for the delivery of that portion of the serum which defendant Rea refused to take, the potency test had been entirely eliminated. The serum which plaintiff offered to deliver and Rea refused to take under the contract of September 22 had not been tested twenty-one days, the period required by the regulations in effect at the time the contract was made; and the serum which plaintiff offered to deliver and Rea refused to take under the contract of October 8 had not been tested eleven days, the period required by the regulations at the time that contract was made. But, it had met the requirements of the Government as to manufacture and had been released by the Government inspectors without the potency test, because at that time no potency test was necessary, and each package was labeled as required by the Government: 'This serum has not been tested.'

"On October 13, the date of the third contract, the potency test required was eleven days, and, as already stated, the potency test was entirely eliminated on October 18. The 4,000,000 c. c. s. called for by that contract were to have been delivered between November 22 and December 16. It appears that the Government reduced the time for the potency test and finally eliminated it because of the epidemic of hog cholera that was sweeping the country and the consequent immediate need for serum. By the time the potency test was eliminated, the demand was greatly lessened, the market was glutted and the price greatly declined.

"On the three contracts, the sole defense was, and the court declared the law to be, that all the Government rules and regulations in effect at the dates of the contracts, pertaining to the manufacture

and sale of serum, were a part of these contracts as if bodily written therein, that the regulations in effect at the date of each contract did require a potency test, and therefore defendant Rea was not required to take serum that had not been tested for potency by the U. S. Government, even though, at the time at which the serum was released for delivery, the potency test had been eliminated. For that reason alone, the court found for the defendant on the contracts of September 22 and October 8. While the court likewise declared the law as to the contract of October 13, he also found and declared that defendant Rea notified the plaintiff not to manufacture the serum called for in that contract, that the market had declined and that it would ruin him if he took it, and that, though the plaintiff offered to test the serum, he would not take it tested or untested. In a word, that Rea refused to comply with his contract and refused to permit plaintiff to comply with it. For that reason, the court found for the plaintiff on the contract of October 13 for the admitted damages of $29,950.''

The first contract follows:

"Sept. 22, 1926.

"This agreement made and entered into this 22d day of Sept., 1926, by and between the Anchor Serum Company, South St. Joseph, Mo., hereinafter known as party of the first part, and Dr. Charles L. Rea, 807 Firestone Bldg. Kansas City, Mo., hereinafter known as party of the second part,

"Witnesseth: The party of the first part hereby sells and the party of the second part hereby buys one million four hundred thousand cubic centimeters (1,400,000 c. c. s.) clear anti-hog cholera serum and two million c. c. s. (2,000,000 c. c. s.) red blood anti-hog cholera serum, to be delivered as follows providing the said serum is released on the dates in question by the U. S. Government inspectors, week Oct. 18th to 23rd, 200,000 c. c. s. blood serum; 25th to 30th 100,000 c. c. s. clear serum and 300,000 c. c. s. blood serum week of Nov. 1st to 6th; 400,000 c. c. s. clear serum and 500,000 c. c. s. blood serum. Week Nov. 8th to 13th, 400,000 c. c. s. clear serum and 500,000 c. c. s. blood serum; week November 15th to 20th, 300,000 clear serum and 300,000 blood serum; week Nov. 22nd to 27th, 200,000 c. c. s. clear serum and 200,000 c. c. s. blood serum, it being understood that all the serum is to be delivered by Nov. 27th, 1926. Terms to be cash on delivery f. o. b. St. Joseph, Mo. at the following prices: Clear serum $1.15 per 100 c. c. s. Blood serum $105 per 100 c. c. s.''

"Did the parties contract for serum which should meet the potency test prescribed by the Government regulations in effect at the date of the contract or at the date the Government released the serum for delivery?''

Plaintiff contends that in construing the contract we should consider certain acts of the parties. There is no ambiguity in the contract and therefore a consideration of the acts of the parties under the contract is unnecessary as aids in construction. [Meissner v. Railway Equipment Co., 211 Mo. 112, 133, 109 S. W. 730.]

Potency test is not mentioned in the contract, but at the time of its execution a potency test of twenty-one days was required by the regulations. It follows that said requirement must be held a part of the contract as if written therein. [Swabey v. Bayers, 274 Mo. 332, 337, 203 S. W. 204; State ex rel. St. Louis v. Gaslight Co., 102 Mo. 472, 485, 14 S. W. 974; Reed v. Painter, 129 Mo. 674, 680, 31 S. W. 919; 6 R. C. L. 855.] And this is true even though the Government, after the execution of the contract, changed or eliminated the test. The purpose of a test is to fix the quality of the serum, and the elimination of the test did not prevent plaintiff from delivering to defendant Rea serum of the quality fixed by the contract. He was within the contract when he demanded a potency test of twenty-one days.

We note that the dates of delivery of serum named in the contract are qualified by the following provision: "Providing the said serum is released on the dates in question by the U. S. Government inspectors." This provision was for the protection of plaintiff in the event the Government refused for any reason to release the serum after it had passed a potency test of twenty-one days. The court ruled correctly in finding for defendants on this contract.

After specifying in the contract of October 8 the amount of serum purchased and the dates of delivery, the parties further therein agreed as follows:

"It being understood by both parties that the present time for releasing Government tests is eleven days and in the event that the government supervision should increase or lessen the said time designated for releasing tests, the delivery of the serum referred to above shall be affected by the same proportional time. It is further understood by both parties that in the event of the failure of any of the serum sold to pass the required Government tests, delivery of such serum shall be delayed until such time as it passes the Government tests."

It is clear from this provision that the dates of delivery were fixed with reference to the time necessary to complete the manufacture of serum and the time necessary to subject it to the potency test required by the regulations in force at the time of execution of the contract. It is also clear that the parties anticipated changes in said regulations. So it was provided that increasing or lessening the time required for the potency test accelerated or postponed

the dates for delivery "by the same proportional time." Thus it appears the defendant Rea did not contract with reference to quality, but contracted for the earliest possible deliveries. Having so contracted he was thereby obligated to accept serum released by the Government inspectors without a potency test. It may be stated, not in aid of construction, but as a fact, that he so construed the contract, for after the test had been eliminated he accepted under the contract untested serum. And it was not until the epidemic subsided and prices declined on a flooded market that he claimed the contract obligated the plaintiff to deliver tested serum.

We also note that the dates of delivery of serum named in this contract are qualified by the following provision:

"In the event of failure, if any, of the serum sold to pass the required Government test, delivery of such serum shall be delayed until such time as it passes the Government test."

This provision was for the protection of plaintiff in the event the Government continued to require a potency test. As stated, the dates of delivery were fixed with reference to the time necessary to complete the manufacture of serum and the time necessary to subject it to the potency test. In this situation the plaintiff would be unable to make deliveries on the dates fixed by the contract if the serum failed to pass the test. The finding should have been for the plaintiff on this contract.

The questions ruled under the contract just considered are identical with questions presented under the contract of October 13. Therefore, for the reasons just stated, we think the court ruled correctly in finding for plaintiff on the contract of October 13.

It follows that the judgment on the contracts of September 22 and October 13 is affirmed, and that part of the judgment on the contract of October 8 is reversed and the cause remanded with directions to enter judgment in favor of the plaintiff and against the defendant Charles L. Rea on said contract for the sum of $7,500, on condition that the plaintiff amends its petition to ask for that sum, otherwise to enter said judgment for $7,200 (the amount originally prayed for) and to enter judgment against the Fidelity & Deposit Company of Maryland for the penalty of the bond executed by it under said contract and sued on in this proceeding. All concur.