GEORGE SCHMIDT et al. v. SUPREME COURT, UNITED ORDER OF FORESTERS, Appellant.

**Division One, June 30, 1914.**

1. **JURISDICTION: Supreme Court: Consent.** Jurisdiction cannot be conferred on the Supreme Court by consent of the parties, and if its jurisdiction has been improperly invoked, the court will upon its own motion refuse to exercise it.

2. ————: ————: **Constitutional Question.** A litigant cannot on a second appeal invoke the jurisdiction of the Supreme Court by contending that certain statutes, which had been upheld by the highest courts of the State and Nation and upon the validity of which he had sought a decision in his favor at the former trial, are unconstitutional, thus using them to invoke jurisdiction upon the other questions in the case while abandoning them for every other purpose.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Shields,* Judge.

TRANSFERRED TO ST. LOUIS COURT OF APPEALS.

*Douglas W. Robert* for appellant; *Robert & Robert* of counsel.

*W. F. Heideman* for respondents.

BROWN, C.—This is the second appeal in this case. The first was from a judgment for the defendant in the circuit court, to the St. Louis Court of Appeals, where it was affirmed, (124 Mo. App. 165), but certified to this court on the statement of the judges that the decision was contrary to the decision of the Kansas City Court of Appeals in Huff v. Woodmen, 85 Mo. App. 96. The opinion of this court reversing the judgment of the St. Louis Circuit Court and remanding the cause for trial appears in 228 Mo. 675.

Upon a retrial there was a verdict and judgment for $1455, from which this appeal has been taken directly to this court, apparently on the ground that the cause involved the construction of the Constitution of the United States.

The respondent is a fraternal beneficiary association organized under the laws of Wisconsin. The plaintiffs are half-brothers and half-sisters of Charles H. Fosz, a resident of St. Louis, Missouri, a member in good standing of its local auxiliary organization in that city called Court Benton No. 129, and was as such the owner of a certificate entitling his beneficiary to $1000 in case of his death. The defendants are now the beneficiaries. The certificate was issued December 1, 1901. The association was first admitted to do business in this State, in accordance with the provisions of section 1410 of the Revised Statutes of 1899, January 6, 1902. Mr. Fosz died by suicide May 15, 1903. Mr. Fosz's application for beneficiary membership in the association, including the insurance, dated November 15, 1901, contained the following questions and answers:

100. Number of brothers living? None.
103. Number of brothers dead? None.
106. Number of sisters living? None.
109. Number of sisters dead? None.

Also the following statements:

122. I hereby affirm and declare that the answers to each and all of the above questions as to my family history are true and correct, and that no intentional omission, concealment or mental reservation has been made of any material fact or circumstance relating thereto, and I agree that said questions and answers shall form a part of my contract with the United Order of Foresters.

124. I have verified each of the foregoing answers and statements as to my personal history, ad·opt them as my own, whether written by me or not, and warrant that they are full, complete and absolutely true. I agree that the exact literal truth of each shall be a condition precedent to any binding contract issued upon the faith of said answers and statements. I further agree that the foregoing answers and statements are offered by me as a consideration for the contract applied for, and are hereby ·made a part of any benefit certificate or policy of insurance that may be issued to me by the United Order of Foresters.

125. I further agree that all of said answers are material, and if any one of them is false or untrue, then I or my beneficiary or beneficiaries have no claim on the United Order of Foresters.

4. That if my death ensues by reason of suicide or self-destruction, voluntary or involuntary, or while sane or insane, no benefits shall be due to my beneficiary or, beneficiaries on account of my death. . . . . . . . . . . .

7. That the laws of the society, in force on the date of my death, shall determine the rights of my beneficiary or beneficiaries, and that this .application and all rights and privileges accruing to me or my beneficiary or beneficiaries thereunder, shall be limited by and subject ·to all laws, rules and regulations which are now in force, or which may hereafter be enacted or adopted by the United Order of Foresters.

A "law" duly enacted by the association was as follows:

"Sec. 9. Suicide.—The United Order of Foresters does not insure against suicide nor against self-destruction, and if any member shall commit suicide or self-destruction, or shall be the means in any manner of taking his own life, he shall by such act forfeit his certificate of membership, together with all rights and benefits due him or his beneficiary or beneficiaries from the Supreme Court or a High Court or a Subordinate Court."

At the trial the defendant asked and the court refused to instruct the jury substantially as follows:

5. That the fact that the defendant did not at the time it issued the certificate have a license to do business in Missouri would not preclude it from the defense of suicide and false representation for the reason that section 1410 of the Revised Statutes of Missouri 1899 is in conflict with section 1 of the Fourteenth Amendment to the Constitution of the United States, because it denies the defendant the equal protection of the laws of this State with corporations organized under the laws of this State.

6. That the same section 1410 is unconstitutional because it is a regulation of commerce between Missouri and Wisconsin.

7. That section 7890 of the Revised Statutes of Missouri 1899, with reference to misrepresentations being immaterial unless the matter misrepresented shall have actually contributed to the death, is unconstitutional and in contravention of section 1 of the Fourteenth Amendment, because it denies the defendant the right to contract.

8. That section 7896 of the Revised Statutes of Missouri 1899, with reference to suicide, is unconstitutional for the same reason.

Upon the facts stated we are confronted at the outset with the question of our jurisdiction of this appeal. If it can be maintained it is only upon the ground that it involves the construction of the Constitution of the United States. While the question is not raised by the respondent, our jurisdiction is conferred by the Constitution, and not by the consent of the litigants. If it has been improperly invoked, it is our duty upon our own motion to refuse to exercise it.

**Jurisdiction: Consent.**

Neither party has, in its brief, called our attention to any provision of the Constitution which it desires us to construe. Although the amount of

**Constitutional Question.** the judgment is very far below the amount necessary to give us jurisdiction on that ground, the appellant has not seen fit to indicate why it is here, but has left us to search the record for our own justification, whether we accept or refuse it. We have done so with the following result. The suit was instituted November 19, 1903, in the circuit court for the city of St. Louis, and was tried in due course, resulting in a judgment for defendant. An appeal was taken to the St. Louis Court of Appeals, where the judgment was affirmed April 2, 1907, but the cause was transferred to this court because the judges of that court deemed its decision in conflict with the decision of the Kansas City Court of Appeals in Huff v. Woodmen, supra. The judgment was reversed by this court June 14, 1910, and the cause remanded to the St. Louis Circuit Court for another trial, which was had in June, 1911, resulting in the judgment for plaintiff from which this appeal was taken. It is evident that during the seven and one-half years of litigation that intervened between the institution of the suit and the last trial, no question of constitutional construction was raised. At the trial a second amended answer was filed calling attention to the claim that each of the sections 7890 and 7896, Revised Statutes 1899, violated the first section of the Fourteenth Amendment to the Federal Constitution because it denied the defendant the right to contract, and therefore deprived it of its property without due process of law.

During the trial instructions were asked by defendant not only on the theory of the unconstitutionality of sections 7890 and 7896 for the reason stated in the answer, but also on the theory that section 1410 of the Revised Statutes of 1899, which requires foreign fraternal beneficiary associations, before they shall be admitted to do business in this State, to conform to the requirements of said section, is unconsti-

tutional "because it denies to the defendant the equal protection of the laws in this State with corporations organized under the laws of this State" and "because it is a regulation of commerce between Missouri and Wisconsin."

It has been ruled by this court that a question of such gravity as the construction of the Federal Constitution or the Constitution of the State "must be raised as soon as orderly procedure will allow." In this case there is something more than a question of diligence in the conduct of defendant's case. It not only failed to introduce this defense by the first open door but undertook to try its case without it, and after winning upon other theories, continued the litigation for years until beaten upon its own ground before it occurred to it to invoke the Constitution as a defense. Had it undertaken to raise the question here upon the first appeal it would have been too late, for it had not been suggested in the trial court and could not have been raised for the first time in this court. By waiting longer they did not revive their right, for in the meantime this court had directly decided in this very case (1) that section 7896 is a valid and substantive law; (2) that it enters into all contracts affecting life indemnity; (3) that an assessment company to have the benefit of the exemption given it by the Act of 1887 must qualify and take out a license under said section 1410; and that unless and until it did so section 7896 entered into each and every one of its contracts. This necessarily disposed of every constitutional objection sought to be interposed at the last trial, except the one relating to section 7890. Of this the court made a separate mouthful, saying at the conclusion of its opinion:

"The question of false statements has not been urged. If it had been we think there is nothing in it. The alleged false statement was that the applicant had no brothers and sisters. The proof was that he.

had half-brothers and half-sisters. Even without our statute, under the general insurance law we do not think this fatal. Under the statute as applied in the Kern case, supra, it certainly is not fatal. It therefore follows that the trial court erred in its judgment in this case, and the St. Louis Court of Appeals was in error in affirming such judgment, and their opinion thereon is overruled, and the doctrine announced in the several cases from the Kansas City Court of Appeals, supra, is approved." [Schmidt v. Foresters, 228 Mo. 675, l. c. 700, 712.]

These constitutional questions were not only ignored by the defendant and disposed of by the court on the previous appeal, but were stale at the time that appeal was decided, having been definitely disposed of by the Supreme Court of the United States, in the exercise of its paramount jurisdiction to construe the Federal Constitution, in the following cases: Knights Templar v. Jarman, 187 U. S. 197; Whitfield v. Insurance Company, 205 U. S. 489; Life Insurance Company v. Riggs, 203 U. S. 243. These cases contain such an admirable exposition of the law on the subject, including the Missouri statutes and cases, that it is unnecessary to make further citations. The questions being no longer debatable when this appeal was taken furnished no foundation for the jurisdiction of this court. [State v. Campbell, 214 Mo. 362; Boling v. Railroad, 189 Mo. 219; Dickey v. Holmes, 208 Mo. 664.]

Of all these constitutional "questions" there is one that deserves to be singled out and dignified with a word of comment for its novelty. While all the others had been tramped over in the march of judicial development until they had ceased to be obstructions in the path, the idea that the foreign insurance company is an instrument, and its contracts subjects of commerce between the States, presented itself as a new discovery in an old and well tilled field, and we nat-

urally turned to the briefs and argument of counsel for an explanation, but they were silent. It then occurred to us that this trial occurred immediately after the decisions of the Supreme Court of the United States and of this court in International Textbook Company v. Pigg, 217 U. S. 91, and the same company against Gillespie, 229 Mo. 397, were promulgated to the public, and that this point had been caught and tied to await an opportunity for further examination.

We do not wish to ·be understood as deciding whether, or to what extent, a litigant may invoke the jurisdiction of this court to re-examine a constitutional question once decided by it. That question is not pertinent to this case. We do hold that after waiting for years during the progress of their case without raising these questions; in the meantime going to trial and inviting a decision of this court assuming and founded upon the validity of all these statutes, which had been upheld by the highest courts of the State and Nation, and generally accepted as the law of the land, they cannot now be permitted to use them to invoke our jurisdiction upon the other questions in the case while abandoning them for every other purpose.

The case is transferred to the St. Louis Court of Appeals. *Blair, C.,* concurs.

PER CURIAM.—The foregoing opinion by BROWN, C., is adopted as the opinion of the court. All the judges concur.